IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAYLE MOORE, et. al. )
)
v. ) Civil No. CCB-02-2991
)
WYETH-AYERST LABORATORIES, et. al. )
)

## MEMORANDUM

Before the court are the plaintiffs' motion to remand and Wyeth's motion to defer consideration of the motion to remand and for a stay of pretrial proceedings pending transfer to MDL 1203. Both motions have been fully briefed and no hearing is necessary. See Local Rule 105.6. For the reasons set forth below, the court grants Wyeth's motion to defer consideration of the motion to remand and for a stay of pretrial proceedings, and, therefore, defers consideration of the plaintiffs' motion to remand.

Background

Gayle Moore, a resident of Maryland, brought suit for injuries sustained as a result of her use of the diet drug Pondimin. She initially filed her complaint in the Circuit Court for Baltimore City. Clara Tremaine and Sheila Lotsberg joined in the action. Ms. Moore alleged claims against Wyeth on products liability theories, and against Northern Pharmacy, an in-state defendant, based on negligence. Ms. Tremaine and Ms. Lotsberg alleged identical causes of action against Wyeth, but did not assert claims against Northern Pharmacy.

Wyeth removed the case to this court alleging that the in-state defendant, Northern

1



Pharmacy, had been fraudulently joined.[1] Wyeth contends that the plaintiffs have no possibility of success against Northern Pharmacy because, under the circumstances of this case, the pharmacy had no duty to warn Ms. Moore when filling a prescription signed by her doctor. Wyeth also filed a motion with the Judicial Panel for Multidistrict Litigation to transfer the case to the Eastern District of Pennsylvania to be consolidated with other diet drug litigation in MDL 1203. The plaintiffs brought a motion to remand, and Wyeth requested a deferral of consideration of the motion to remand and a stay of other pretrial proceedings pending the Judicial Panel on Multidistrict Litigation's resolution of the motion to transfer.

MDL 1203

According to the complaint, "[t]his case involves the diet drugs Fenfluramine, Phentermine and Dexfenfluramine commonly know as Fen-Phen and Redux which were manufactured, sold, distributed and promoted by Defendants to capitalize on the public's obsession with being thin." (Def. Notice of Removal Ex. A ¶ 1)[2]. The Judicial Panel on Multidistrict Litigation has consolidated in the Eastern District of Pennsylvania actions relating to "alleged defects in three prescription drugs- known by the chemical names fenfluramine, dexfenfluramine, and phentermine -used in the treatment of obesity."[3] In re Diet Drugs Products

---

[1] Northern Pharmacy did not consent to removal. (Def. Notice of Removal at 12.) However, a defendant who is fraudulently joined does not need to consent to removal. Richardson v. Phillip Morris, Inc. 950 F. Supp. 700, 701 n.1 (D. Md. 1997).

[2] Citations to the complaint will be to Exhibit A of Wyeth's Notice of Removal, because the complaint there has numbered paragraphs.

[3] MDL 1203 was originally transferred to Judge Louis C. Bechtle. In re Diet Drugs Products Liability Litigation. 990 F. Supp. at 836. Judge Bechtle retired on June 30, 2001 and the case was reassigned to Judge Harvey Bartle III. In re Diet Drugs Products Liability Litigation, __ F. Supp. 2d at __, 2002 WL 2002674 at *4 n.5.

Liability Litigation, 990 F. Supp. 834, 836 (Jud. Pan. Mult. Lit. 1998). This action, therefore appears to be within the scope of MDL 1203 in the Eastern District of Pennsylvania.[4]

Since the Judicial Panel for Multidistrict Litigation consolidated cases in the Eastern District of Pennsylvania in MDL 1203, that court has issued over 2500 pretrial orders, conducted Daubert hearings, and approved a settlement. See In re Diet Drugs Litigation, __ F. Supp. 2d __, __, 2002 WL 2002674 at *4 (E.D. Pa. Aug. 13, 2002); 2000 WL 962545 (E.D. Pa. June 28, 2000); 282 F.3d 220, 229 n.3 (3d Cir. 2002). The court in MDL 1203 has also considered motions to remand similar to the motion before this court. See In re Diet Drug Products Liability Litigation, Pretrial Order 37, 1998 WL 254976 (E.D.Pa. April 16, 1998); Pretrial Order of April 23, 1999, 1999 WL 240330; Pretrial Order of February 15, 2000, 2000 WL 217509; Pretrial Order of December 7, 2000, 2000 WL 1886594; Pretrial Order of August 13, 2002, __ F. Supp. 2d __, 2002 WL 2002674. Indeed, many of these motions involved the joinder of in-state pharmacies on claims similar to those alleged against Northern. In re Diet Drugs Product Liability Litigation, Order of August 13, 2002, __ F. Supp. 2d __, __, 2002 WL 2002674 at *6-8; Order of December 7, 2000, 2000 WL 1886594; Order of April 16, 1998, 1998 WL 254976.

Framework for a Motion to Stay Pending Transfer to Multidistrict Litigation

The Judicial Panel on Multidistrict Litigation has held that a district court judge has the authority to either wait for a transfer order without ruling on a motion to remand, or to rule on the motion before a transfer order has been issued. In re Asbestos Products Liability Litigation, 170 F. Supp. 2d 1348, 1349 n. 1 (Jud. Pan. Mult. Lit. 2001) ("[T]hose courts wishing to address

---

[4] The plaintiffs' argument that they are "outside the nationwide class action settlement agreement and thus, not subject to transfer to MDL 1203" (Def. Notice of Removal Ex. A ¶ 2) is best addressed by the Judicial Panel on Multidistrict Litigation.

3

[motions to remand] have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them. . . ."); see also Rules of the Judicial Panel on Multidistrict Litigation, Rule 1.5 ("The pendency of a motion . . . before the Panel concerning transfer . . . of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

Allowing the transferee judge to rule on the motion to remand provides for consistent treatment of similar issues and may reduce the burden on litigants and the judiciary. In transferring the diet drug products liability litigation to the Eastern District of Pennsylvania, the Judicial Panel on Multidistrict Litigation noted that "[c]entralization under Section 1407 is . . . necessary in order to eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings . . ., and conserve the resources of the parties, their counsel and the judiciary." In re Diet Drugs Products Liability Litigation, 990 F. Supp. at 836; but see Kohl v. American Home Products, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) (holding that it does not further efficiency or uniformity to transfer a motion to remand when it depends entirely on a unique question of state law).

Similarly, ruling on an appeal of the transfer to multidistrict litigation of an Agent Orange case with a jurisdictional issue pending, the Second Circuit held that,

> "[t]he jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years. Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served."

In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990) (internal citations omitted).

As noted above, the transferee court has already ruled on a number of motions to remand involving state law claims against pharmacies. These cases have required that court to determine the scope of the learned intermediary doctrine as applied to a pharmacy, which is the same issue presented in this case. See e.g., In re Diet Drugs Products Liability Litigation, __ F. Supp. 2d. __, __, 2002 WL 2002674 at * 6 (E.D. Pa. August 13, 2002). The transferee court has experience deciding motions to remand in this case involving pharmacies, and has intimate familiarity with the issues involving products liability claims arising from the use of Pondimin. Because it furthers the goals of judicial economy and consistency, the motion to remand will be stayed until the Judicial Panel on Multidistrict Litigation can rule on Wyeth's motion to transfer.

Possibility of Recovery Against Northern Pharmacy

Though the court does not decide the issue, the motion to remand would very likely be denied if the court were to consider it. Despite the plaintiffs' arguments to the contrary, they have only stated a cause of action under negligence,[5] and the court is skeptical that there is a possibility of recovery against Northern Pharmacy, such that a finding of fraudulent joinder is inappropriate.

The Court of Appeals of Maryland has held that a pharmacist may not substitute his

---

[5] The complaint alleges only that Northern Pharmacy was negligent. (Def. Notice of Removal Ex. A ¶¶ 101-109.) However, the complaint incorporates by reference all the products liability allegations against Wyeth in its descriptions of the negligence counts against Northern Pharmacy. (Id. at ¶¶ 101, 105.) The plaintiffs argue that since the complaint incorporates the products liability allegations against Wyeth by reference, they have stated product liability claims against Northern Pharmacy. (Pls Mot. to Remand at 9-10.)
The plaintiffs are mistaken about the effect of an adoption by reference. "Adoption by reference is useful as a matter of convenience, but it may not be used to transform a negligence claim into one of strict liability." Ziegler v. Kawasaki Heavy Industries, 539 A.2d 701, 704 (Md. App. 1988).

judgment for that of a physician writing a prescription. People's Service Drug Stores, Inc. v. Somerville, 158 A. 12, 13 (1932). The court in that case found that if a physician is liable for writing a prescription that causes harm, that does not mean that the pharmacist is also liable, noting that "[i]t would be a dangerous principle to establish that a druggist cannot safely fill a prescription merely because it is out of the ordinary. If that were done, many patients might die from being denied unusual remedies in extreme cases." Id.

The plaintiff's allegation is not that Northern Pharmacy was negligent in filling Ms. Moore's prescription, but rather that Northern had a duty to warn her of statements contained in the Physicians Desk Reference. The Fourth Circuit, applying Maryland law, has held that a pharmacist has no duty to warn a customer when filling a doctor's prescription, noting that:

> "[i]f the law is going to require . . . that the physician be second-guessed by the pharmacist . . . only danger could result. A pharmacist . . . who advised a patient not to take a drug prescribed by a physician might easily cause death or serious injury, and we think the practice of medicine by pharmacists . . . is not a field in which we should even encourage them to engage, much less require it. . . ."

Hofherr v. Dart Industries, Inc., 853 F.2d 259, 263-64 (4th Cir. 1988).

The Fourth Circuit's opinion in Hofherr adopts the same rationale as the Maryland Court of Appeals in People's Service Drug Stores; it is unwise to impose liability on a pharmacist for filling a prescription signed by a physician, because the physician is in a better position to evaluate the patient's medical needs. There are certainly exceptions to this broad limit on a pharmacist's liability, but they are limited. For example, "this does not mean that pharmacists can safely fill prescriptions calling for doses that are obviously fatal; or that where the doses prescribed appear to be unusual the prescription can safely be filled without inquiry of the physician to make sure there has been no error." People's Service Drug Stores, 158 A. at 14. Failing to warn a patient that the Physicians Desk Reference says a prescription may have

6

harmful side effects is a far cry from the imminent safety concerns which appear necessary to impose liability on a pharmacy. The court is therefore skeptical that the Maryland courts would find a pharmacist can be held liable on a negligence theory simply because he or she filled a prescription which later turns out to be the subject of nationwide products liability litigation. A final determination on this question, however, is better left to the transferee court, in light of its superior knowledge of the scientific and legal issues involved in this case.

Finally, only one of the plaintiffs, Gayle Moore, has made any allegations against Northern Pharmacy. (Def. Notice of Removal Ex. A ¶¶ 101-109.) The other two plaintiffs do not allege that they had any interaction with Northern Pharmacy at all. It is unlikely that Wyeth should be deprived of a federal forum to litigate a complaint brought by two plaintiffs who have no claims against any in-state defendant where the amount in controversy exceeds the jurisdictional minimum.

For the foregoing reasons, the motion for deferral of consideration of the motion to remand and stay of pretrial proceedings pending transfer to MDL 1203 will be granted. If the motion to transfer is denied, the motion to remand will be decided promptly. A separate Order follows.

_Nov. 12, 2002_
Date

_Catherine C. Blake_
Catherine C. Blake
United States District Judge